UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN J. TULLIS,

    Petitioner,

v.                                                          Case No. 8:07-cv-437-T-23TGW

SECRETARY, Department of Corrections,

    Respondent.
_____/

**O R D E R**

Tullis petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) and challenges his conviction for robbery with a weapon, for which conviction he serves fifty years. Numerous exhibits ("Respondent's Exhibit __") support the response.[1] (Doc. 16) Tullis was re-sentenced twice.[2] The respondent concedes the petition's timeliness to challenge the second re-sentencing but argues that Tullis is time-barred from challenging his conviction. (Doc. 16 at 6) Because Tullis received a new one-year limitation upon the entry of a new judgment when he was re-sentenced, the respondent's argument is foreclosed by Ferreira v. Dep't of Corr., 494 F.3d 1286, 1293 (11th Cir. 2007) ("We now hold that AEDPA's statute of limitations begins to run when the judgment pursuant to which the petitioner is in custody, which is based on both the conviction and the sentence the petitioner is serving, is final."). Nevertheless, the petition lacks merit.

---

      [1] Tullis filed no reply.

      [2] Tullis originally received a sentence of life imprisonment.

## **FACTS**[3]

During the early morning hours of March 14, 1996, a co-defendant drove Tullis to a Circle K on U.S. 41 in Hillsborough County, Florida. Tullis went inside and asked the clerk for a gasoline can. As the clerk handed the can to him, Tullis put his right hand into his pocket, feigned having a gun, and ordered the clerk to surrender the money. When the clerk refused, Tullis pulled from his pocket a screwdriver and took a twenty dollar bill that was exposed on the register. Tullis and the co-defendant fled. Pursing police officers observed Tullis jump from the car and run. Upon apprehension, the co-defendant confessed. Tullis was arrested later.

Without the benefit of a plea agreement, Tullis pleaded guilty to robbery with a weapon, and in March, 1997, he was sentenced as a violent career criminal to life imprisonment with a thirty-year minimum mandatory. The mandatory minimum provision was vacated on direct appeal. (Respondent's Exhibit 4) Tullis was re-sentenced in October, 1998. In 2002 Tullis successfully argued a state Rule 3.800 motion to correct sentence. In 2003 the life sentence was vacated and Tullis was re-sentenced to fifty years with a fifteen-year minimum mandatory, the sentence Tullis now serves.

## **STANDARD OF REVIEW**

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs this proceeding. Wilcox v. Florida Dep't of Corrections, 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000). Section 2254(d), which creates a highly

---

[3] This summary of the facts derives from prosecutor's factual basis when Tullis pleaded guilty. (Respondent's Exhibit 1 at 155)

- 2 -

deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." Bell v. Cone, 535 U.S. 685, 694 (2002). See Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness

- 3 -

per se, of the state court decision that we are to decide."). Moreover, the phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme court "as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412.

In per curiam decisions without a written opinion, the state appellate court affirmed the denial of Tullis's Rule 3.850 motions to vacate. (Respondent's Exhibits 10 and 25) The state appellate court's per curiam affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." Wright v. Moore, 278 F.3d 1245, 1254 (11th Cir.), reh'g and reh'g en banc denied, 278 F.3d 1245 (2002), cert. denied sub nom Wright v. Crosby, 538 U.S. 906 (2003).

Tullis bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies only to a finding of fact, not a mixed determination of law and fact. Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert. denied, 534 U.S. 1046 (2001). Consequently, this court must defer to the findings of fact in the state court's rejection of Tullis's post-conviction claims. (Orders Denying Motion for Post-Conviction Relief, Respondent's Exhibits 7 at 175-80 and 194-97 and Exhibit 22 at 114-19)

## DIRECT APPEAL CLAIM

Ground One:

Tullis alleges that his guilty plea was involuntary because neither the trial judge nor defense counsel advised him that a violent career criminal sentence was mandatory. The respondent opposes this ground specifically based on Tullis's failure to exhaust.[4]

A petitioner must present each claim to a state court before raising the claim in federal court. "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365 (1995), quoting Picard v. Connor, 404 U.S. 270, 275 (1971). Accord Rose v. Lundy, 455 U.S. 509, 518-19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error."), and Upshaw v. Singletary, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated.").

The failure to properly exhaust each available state court remedy causes a procedural default of the unexhausted claim. O'Sullivan v. Boerckel, 526 U.S. 838, 847 (1999) ("Boerckel's failure to present three of his federal habeas claims to the Illinois

---

[4] The exhaustion doctrine precludes review of an unexhausted claim unless the respondent specifically waives the procedural default. "[B]ecause the State did not expressly waive McNair's procedural default in this case, we hold that § 2254(b)(3)['s proscription that the state must expressly waive the exhaustion requirement] applies and that McNair is procedurally barred from raising his extraneous evidence claim." McNair v. Campbell, 416 F.3d 1291,1305 (11th Cir. 2005), cert. denied, 547 U.S. 1073 (2006).

Supreme Court in a timely fashion has resulted in a procedural default of those claims."), Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief."), Kennedy v. Herring, 54 F.3d 678, 684 (1995) ("If a claim was never presented to the state courts, the federal court considering the petition may determine whether the petitioner has defaulted under state procedural rules."), appeal after remand, Kennedy v. Hopper, 156 F.3d 1143 (11th Cir.), cert. denied sub nom Kennedy v. Haley, 526 U.S. 1075 (1999).

Tullis procedurally defaulted this claim by failing to present the claim to the state courts, specifically, on direct appeal. As a general proposition, a federal court is precluded from addressing the merits of a procedurally defaulted ground unless the petitioner can show "cause and prejudice" or "manifest injustice." Coleman v. Thompson, 501 U.S. 72, 29-30 (1991); Murray v. Carrier, 477 U.S. 478, 496 (1986). "Cause" must ordinarily be something external to the defense. Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995). To show "prejudice," the petitioner must show "not merely that the errors at his trial created the possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Hollis v. Davis, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)) (emphasis original).

To meet the fundamental miscarriage of justice exception, Tullis must show constitutional error coupled with "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that

was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995).  This exception is not available unless "petitioner shows, as a factual matter, that he did not commit the crime of conviction." Ward v. Cain, 53 F.3d 106, 108 (5th Cir. 1995) (denying certificate of probable cause).

Tullis fails to establish either cause and prejudice or that a fundamental miscarriage of justice will occur if his ground is not addressed on the merits.  Therefore, this ground is procedurally barred from federal review.  Moreover, this claim is moot because Tullis's mandatory life sentence, imposed pursuant to the violent career criminal statute, was vacated on direct appeal.

## POST-CONVICTION CLAIMS

Tullis claims ineffective assistance of counsel, a difficult claim to sustain.  "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)). Strickland v. Washington, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented.  In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims.  According to Strickland, first, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland, 466 U.S. at 687, 104 S.Ct. 2052.

Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998).

Strickland requires proof of both deficient performance and consequent prejudice. Strickland, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); Sims, 155 F.3d at 1305 ("When applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. Strickland requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Tullis must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691-92. To meet this burden, Tullis must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

Strickland cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."

466 U.S. at 690-91.  Tullis cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . .  We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  Accord Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable . . . .  [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).  See also Jones v. Barnes, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous claim).

Tullis must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The state court conducted an evidentiary hearing and denied the claims of ineffective assistance of counsel with the following introduction.

> Defendant claims ineffective assistance of counsel. When a claim of ineffective assistance of counsel is alleged, the burden is on the person seeking collateral relief to specifically allege the grounds for relief and to establish whether the grounds resulted in prejudice. *See Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A defendant must first show the specific errors or omissions which were so

> egregious as to constitute a failure to provide "counsel" under the Sixth
> Amendment, and second, the defendant must show the prejudice that
> resulted. *Id.* In order to satisfy the prejudice prong, the defendant must
> affirmatively show that there is a reasonable probability that, but for
> counsel's error, the outcome of the trial would have been different. *Id.*

(Respondent's Exhibit 7 at 195) Because the state court correctly recognized that

<u>Strickland</u> governs each claim of ineffective assistance of counsel, Tullis cannot meet the

"contrary to" test in Section 2254(d)(1). Tullis instead must show that the state court

unreasonably applied <u>Strickland</u> or unreasonably determined the facts.

<u>Ground Two</u>:

Tullis alleges that his guilty plea was coerced (1) because the trial court denied an

extension of time even though counsel was appointed just seventeen days before trial

and (2) because of counsel's lack of preparation, specifically, counsel's failure to

interview witnesses and obtain an expert witness to present an intoxication defense.

The state post-conviction court summarily rejected the first part of this ground as follows

(Respondent's Exhibit 7 at 178):

> In ground 2, Defendant alleges that the trial court erred by denying
> Defendant's motion for continuance, thereby prejudicing Defendant with an
> eleventh-hour substitution of counsel in violation of his Sixth Amendment
> rights. After reviewing the January 23, 1997, transcript, the record does
> not reflect that Defendant's counsel made a Motion for Continuance.
> Therefore, the Court did not err because Defendant's counsel did not make
> such a motion. As such, no relief is warranted upon ground 2.

The state court record supports the state court's finding. Consequently, Tullis fails to

show that the state court's decision is based on an unreasonable determination of the

facts.

- 10 -

Following an evidentiary hearing, the state post-conviction court rejected the second part of this ground as follows (Respondent's Exhibit 7 at 195-96) (references to the record omitted):

> In ground 1a, Defendant claims that court appointed counsel . . . coerced his guilty plea in order to conceal [defense counsel]'s unpreparedness for trial. Defendant further claims that [defense counsel] told him if he pled open court he could get the fifteen year deal previously offered by the State in December 1996. At the evidentiary hearing, [defense counsel] testified that he did not coerce Defendant nor tell Defendant he could get the fifteen year deal previously offered by the State.
>
> The real crux of ground 1a, however, is whether [defense counsel] erroneously advised Defendant as to the consequences of an open plea. Defendant claims that as a result of his open plea he received a mandatory life sentence.
>
> The record reflects that the Court sentenced Defendant to a mandatory life sentence pursuant to section 775.084, Fla. Stat. 1996.[1] However, when Defendant was sentenced . . . the Court and State were under the mistaken impression that section 775.084 violent career criminal statute required a mandatory life sentence. A review of section 775.084(4)(d), Fla. Stat. 1996, shows that the Court had the option of sentencing without mandatory life.[2] Therefore, in light of the fact that the Court had the option of sentencing without mandatory life, and the record reflects [defense counsel] argued at Defendant's sentencing hearing that Defendant should not be sentenced as a violent career criminal, but rather, be given leniency because of his constant addition [sic] to alcohol and drugs, it cannot be said that counsel was ineffective. As such, no relief is warranted on this ground.
>
> > [1] Under section 77S.0B4(4)(c), Fla. Stat. 1996, a violent career criminal who commits a felony of the first degree, shall receive a life sentence.
> >
> > [2] Section 775.084(4)(d), Fla. Stat. 1996, reads in pertinent part:
> > > If the court finds, pursuant to paragraph (3)(a) or paragraph (3)(b), that it is not necessary for the protection of the public to sentence a defendant who meets the criteria for sentencing as a habitual felony offender, a habitual violent felony offender, or a violent career criminal, with

- 11 -

>                       respect to an offense committed on or after
>                       October 1, 1995, sentence shall be imposed
>                       without regard to this section.

The state court's credibility determination (that counsel's testimony was credible over that of Tullis) and the factual determination (that counsel never coerced Tullis into pleading guilty) bind this court. Baldwin v. Johnson, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [counsel's] testimony over [petitioner's]."), cert. denied, 526 U.S. 1047 (1999) and Devier v. Zant, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are, however, entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d)."), cert. denied, 513 U.S. 1161 (1995). See also 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). Consequently, ground two lacks merit.

Ground Three:

Tullis asserts that counsel was ineffective at sentencing for (1) allowing the state to present an incorrect criminal history, (2) not calling as a witness the person who prepared the presentence report, and (3) not calling as a witness the victim to support a guidelines sentence. The state post-conviction court conducted an evidentiary hearing and rejected each claim as follows (Respondent's Exhibit 22 at 116-19) (references to the record omitted):

> In ground 1, Defendant claims ineffective assistance of counsel for failing
> to object to an incorrect prior conviction at sentencing. Specifically,
> Defendant claims that [defense counsel] failed to object when the State

misstated Defendant's prior conviction for Attempted First Degree Murder during Defendant's sentencing hearing on January 13, 2003. A review of the January 13, 2003, Transcript reflects that [the prosecutor] stated the following:

> [Prosecutor]: But he does still, clearly, qualify as an HVFO, qualifying as a habitual felony offender as well. He has burg[lary] dwellings, burg[lary] structures, first degree murder, robbery, grand theft in the past. And all of this occurred in a six or seven year span. He is a danger to this community.

After reviewing the Motion, the court file, and the record, the Court found that it was unable to conclusively refute the allegations raised in ground 1. As such, the office of the State Attorney was ordered to respond to ground 1.

At the November 14, 2005, evidentiary hearing, [defense counsel] testified that the Defendant informed him that his prior Attempted First Degree Murder charge had later been reduced to Attempted Second Degree Murder. He further testified that the presentence investigation that was done for purposes of the resentencing showed that the Defendant had been convicted of Attempted First Degree Murder. [Defense counsel] testified that his argument was that the Defendant had been convicted of Attempted Second Degree Murder, while the State argued that Defendant had been convicted of [the] Attempted First Degree Murder charge. [Defense counsel] claims that [the prosecutor]'s statement that Defendant had been convicted of First Degree Murder was simply a misstatement and was not reflected in [the] presentence investigation or the scoresheet.

After reviewing the testimony, the court file, and the record, the Court finds [defense counsel]'s testimony to be credible. See Smith v. State, 697 So. 2d 991, 992 (Fla. 4th DCA 1997) (stating that following an evidentiary hearing the finder of fact can rely upon testimony it finds to be credible and reject testimony it finds to be untrue). Therefore, the Court finds that [the prosecutor] misspoke regarding the Defendant's prior conviction. However, based upon the court documents that correctly reflected the charge of Attempted Murder, the Court finds that the Defendant has failed to satisfy the second prong of Strickland in that he has failed to prove that counsel's alleged deficient conduct resulted in prejudice. If a defendant's claim of ineffective assistance of counsel fails to satisfy the prejudice component, it is unnecessary to rule on the performance component. See Johnson v. State, 593 So. 2d 206 (Fla. 1992). As such, no relief is warranted upon ground 1.

In ground 2, Defendant claims ineffective assistance for failing to present evidence or [a] witness during [the] sentencing phase. Specifically, Defendant claims that counsel failed to interview and present Elizabeth Staley, who conducted the Defendant's pre-sentence interview, as a witness on January 13, 2002. After reviewing the Motion, the court file, and the record, the Court found that it was unable to conclusively refute the allegations raised in ground 2. As such, the office of the State Attorney was ordered to respond to ground 2.

At the November 14, 2005, evidentiary hearing, [defense counsel] testified that Ms. Staley's recommendation spoke for itself. He further testified that he thought it would have been highly unusual to bring in someone from the Department of Corrections to testify as to their recommendation. [Defense counsel] claims that he worked several months trying to get the State to make an offer based upon the recommendation, but no offers were made.

Based upon [defense counsel]'s testimony, a review of the court file, and the record, the Court finds [defense counsel]'s testimony to be credible. See Smith v. State, 697 So. 2d 991, 992 (Fla. 4th DCA 1997) (stating that following an evidentiary hearing the finder of fact can rely upon testimony it finds to be credible and reject testimony it finds to be untrue). Therefore, the Court finds that there is no credible evidence demonstrating that [defense counsel] failed to interview and present Elizabeth Staley, as a witness on January 13, 2002. Therefore, Defendant fails to demonstrate how counsel performed deficiently pursuant to Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). As such, no relief is warranted upon ground 2.

In ground 3, Defendant claims ineffective assistance for failing to have the victim present at resentencing. Defendant claims that his family was willing to pay to locate the victim and have her testify that the Defendant should only have received a ten to fifteen year prison sentence. After reviewing the Motion, the court file, and the record, the Court found that it was unable to conclusively refute the allegations raised in ground 3. As such, the office of the State Attorney was ordered to respond to ground 3.

At the November 14, 2005, evidentiary hearing, [defense counsel] testified that he attempted to locate the witness in Hillsborough County by researching the internet, contacting her previous employer, and following up on her last known phone number. He further testified that he was unable to locate the witness. [Defense counsel] testified that his notes did not indicate that there was any discussion of hiring an investigator. Further, he claims that he had no notations of the family ever making a cash deposit for the hiring of an investigator.

- 14 -

> Based upon [defense counsel]'s testimony, a review of the court file, and the record, the Court finds [defense counsel]'s testimony to be credible. See Smith v. State, 697 So. 2d 991, 992 (Fla. 4th DCA 1997) (stating that following an evidentiary hearing the finder of fact can rely upon testimony it finds to be credible and reject testimony it finds to be untrue). Therefore, the Court finds that there is no credible evidence demonstrating that [defense counsel] was ineffective for failing to have the victim present at resentencing.  Therefore, Defendant fails to demonstrate how counsel performed deficiently pursuant to Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  As such, no relief is warranted upon ground 3.

Tullis presents no argument to overcome the state post-conviction court's credibility determinations and factual findings that bind this court.  Baldwin v. Johnson, 152 F.3d at 1316.  Based on those rulings, the state court's application of Strickland was not unreasonable.  Consequently, ground three lacks merit.

Accordingly, Tullis's petition for the writ of habeas corpus (Doc. 1) is **DENIED**. The clerk shall enter a judgment against Tullis and close this case.

ORDERED in Tampa, Florida, on August 4, 2010.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE